IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF
PENNSYLVANIA

SWATHI GADDAM,

        Plaintiff,

v.                                                                                    C.A. NO.

METROPOLITAN LIFE INSURANCE
COMPANY and TRINET GROUP, INC.,

        Defendant,                                              JURY TRIAL DEMANDED

## COMPLAINT

AND NOW comes the Plaintiff, SWATHI GADDAM, and files this Complaint
against METROPOLITAN LIFE INSURANCE COMPANY averring as follows:

### PARTIES

1.      Plaintiff, Swathi Gaddam, is an adult individual residing at 1017
Greyfox Circle, Bridgeville, PA 15017

2.      Defendant, The Metropolitan Life Insurance Company (hereinafter
"MetLife"), is an insurance company engaged in interstate commerce throughout the
United States including the Commonwealth of Pennsylvania with a principal office
located at Group Life Claims, P.O. Box 6100, Scranton, PA 18501.

3.      TriNet, Inc. is a California business corporation providing human
resource services to companies throughout the United States with its principal office
located at 1100 San Leandro Boulevard, Suite 400, San Leandro, CA 94577.

4.      At all times material hereto the Defendants were acting through their
authorized employees and agents working within the course and scope of their
employment and/or agency.

**JURISDICTION**

5.      Plaintiff brings this action against Defendant MetLife and TriNet under the provisions of the *Employee Retirement Income Security Act* ("ERISA"), 29 U.S.C.A. §1001 *et seq*.

6.      Jurisdiction over Defendants in this case is conferred upon this Court pursuant to ERISA, 29 U.S.C.A. §1132 and pursuant to 28 U.S.C.A. §1331.

**FACTS**

7.      Round Corner, Inc. employed Plaintiff's brother, Mahesh Gaddam.

8.      Round Corner, Inc. hired Defendant TriNet to handle all of its Human Resources needs for its employees, including its group life insurance program.

9.      Round Corner, through TriNet, offered its employees group life insurance with Defendant MetLife.

10.     Plaintiff's brother participated in the group life insurance program provided by his employer and obtained a policy of life insurance issued by Defendant MetLife.

**FACTS RELATING TO $25,000.00 CLAIM AGAINST TRINET**

11.     Originally the life insurance covering Plaintiff's brother, named his sister, Swathi Gaddam, Plaintiff herein, as 100% beneficiary.

12.     After obtaining the above referenced insurance the Plaintiff's brother got married.

13.     On June 9, 2015, Plaintiff's brother completed a Benefits Election Form changing his beneficiary designation from 100% for his sister to 50% to his sister and 50% to his wife. Attached hereto and Marked Exhibit "A" is a copy of the June 9, 2015 Benefits Election Form.

14.     Plaintiff's brother died on August 22, 2015.

15.     On August 31, 2015 TriNet submitted to MetLIfe a claim based upon the original insurance coverage, but not based on the June 9, 2015 Benefits Election Form changes.

16.     Therefore, on September 9, 2015, MetLife paid to Plaintiff 100% of the $100,000.00 policy and paid nothing to the widow of Plaintiff's brother.

17.     Without any knowledge that her brother had completed the June 9, 2015 Benefits Election Form, Plaintiff paid the widow $50,000.00 believing it was unfair for her sister-in-law and her brother's widow to receive nothing.  Attached hereto and Marked Exhibit "B" is copy of documentation proving the payment of the $50,000.00 to her brother's widow Manju Tangella.

18.     Thereafter, on October 12, 2015, TriNet provided to MetLife the June 9, 2015 Benefits Election Form.

19.     Having received the June 9, 2015 Benefits Election Form, MetLife paid the widow $50,000.00 and demanded from Plaintiff a return of $50,000.00 from the $100,000.00 previously paid.  Attached hereto and Marked Exhibit "C" is a copy of the February 17, 2016 demand letter from MetLife to the Plaintiff.

20.     After receiving the February 17, 2016 letter, Plaintiff retained counsel, and after protracted discussions, Plaintiff paid MetLife $25,000.00 to settle the claim.

Attached hereto is a January 12, 2017 letter from Plaintiff's counsel to MetLife counsel confirming the settlement. (The 2016 date on the letter is a typo.)

21.     Because of TriNet's error in failing to timely submit the June 9, 2015 Benefits Election Form, Plaintiff would not have been forced to pay MetLife $25,000.00.

**FACTS RELATING TO $142,500.00 CLAIM AGAINST TRINET OR METLIFE**

22.     In addition to changing his beneficiary election through the June 9, 2015 Benefits Election Form, Plaintiff's brother increased his life insurance coverage by obtaining supplemental insurance that provided, in addition to the $100,000.00, a payment of three times his salary upon his death.

23.     Plaintiff had an annual salary of $95,000.00.

24.     Plaintiff requested payment of her 50% share of the Supplemental Life Insurance Policy, which comes to 50% of three times $95,000.00 or $142,500.00.

25.     MetLife refused to pay the Supplemental Insurance.

26.     Through counsel, Plaintiff sought a justification of the denial and counsel received a response from MetLife stating that, "MetLife does not have a record to reflect an Optional life election."  See copy of June 22, 2016 email from MetLife's counsel to Plaintiff's counsel attached hereto as Exhibit "D."

27.     By email dated June 22, 2016 Plaintiff's counsel asked MetLife, "Could you describe for me what document or record MetLife would have if [MetLife] provided the Optional Life Election?"  See Exhibit D.

28.     MetLife failed to respond to the above inquiry.

29.     Plaintiff alleges that the June 9, 2015 Benefits Election Form is a record that reflects that Plaintiff's brother did make an "optional life election" and therefore, MetLife is obligated to pay Plaintiff $142,500.00.

30.     In the alternative, if TriNet needed to submit to MetLife any documentation in addition to the June 9, 2015 Benefits Election Form to effectuate the Supplemental Insurance coverage, then TriNet erred by not submitting the additional documentation.

31.     If TriNet failed to submit to MetLife all documents necessary to effectuate the Supplemental Insurance coverage, TriNet's error cost Plaintiff $142,500.00.

## COUNT I - TRINET

32.     Plaintiff incorporates by reference Paragraphs 1 through 31 above.

33.     TriNet was the authorized agent of Plaintiff brother's employer to administer, *inter alia*, the employer's group life program.

34.     As the authorized agent, TriNet pursuant to ERISA was under a duty to administer the group life program with due care for the benefit of those employees of Round Corner, Inc. who chose to participate in the group life program and the employee's beneficiaries.

35.     TriNet breached its duty of due care when on August 31, 2015 it sent to MetLife a claim for benefits seeking the payment of benefits based upon a superseded benefit election form.

36.     TriNet breached its duty of due care when it failed to send to MetLife the June 9, 2015 Benefits Election Form until October 12, 2015.

37.     Having initially sent in a superseded benefit election form to MetLife, TriNet caused the erroneous payment by MetLife of the $100,000.00 to Plaintiff with no payment to Plaintiff's widowed sister-in-law.

38.     When TriNet submitted the wrong claim to MetLife, TriNet knew the deceased employee left a widow and it was reasonably foreseeable that the deceased's sister would share the life insurance proceeds with her sister-in-law and her brother's widow who had received nothing.

39.     As a result of TriNet's breach of the duty of due care, and based on the facts stated above, the Plaintiff was forced to give up $25,000.00 of the $50,000.00 in life insurance proceeds she should have received.

40.     In addition, if TriNet failed to submit to MetLife any documentation necessary to effectuate the three times salary supplemental insurance coverage, then TriNet breached its duty of due care by not submitting the additional documentation.

WHEREFORE, Plaintiff demands judgment against TriNet of $167,500.00 plus prejudgment interest and attorneys fees.


**COUNT II - METLIFE**

41.     Plaintiff incorporates by reference Paragraphs 1 through 40 above.

42.     MetLife stands in a fiduciary relationship to the participants in Round Corner, Inc.'s group life insurance program, and also to those participants' beneficiaries.

43.     Pursuant to ERISA MetLife was under a duty to administer the benefits of the group life program with due care for the benefit of those employees of Round

Corner, Inc. who chose to participate in the group life program and to those employee's beneficiaries.

44.     MetLife has breached its duty of due care when it failed to pay to the Plaintiff 50% of the three times salary supplemental insurance.

45.     MetLife is an entity with a financial interest in whether the Plaintiff are paid the supplemental life insurance proceeds or not, as the payment would be made from Defendant's own assets.

46.     Since MetLife is a financially interested entity, the capricious and arbitrary standard of review of its decision cannot apply.

47.     A de novo review of the decision not to pay the supplemental life insurance proceeds is applicable to this case and requires a finding that the supplemental life insurance proceeds must be paid to the Plaintiff.

48.     In any event, even a review on a capricious and arbitrary standard, requires a finding that the supplemental life insurance proceeds must be paid to the Plaintiff.

WHEREFORE, Plaintiff demands judgment against MetLife of $142,500.00, plus pre-judgment interest, plus attorney's fees.

Respectfully submitted,

By:      S/John Newborg_____
             John Newborg, Esq.
             I.D. No. 22276
             225 Ross Street, 4th Floor
             Pittsburgh, PA 15219
             (412) 281-1106
              newborglaw@gmail.com